Vol. 34]    JANUARY TERM, 1892.    93

Grand Island Banking Co. v. First Natl. Bank.

GRAND ISLAND BANKING CO. V. FIRST NATIONAL
BANK OF GRAND ISLAND.

[FILED MARCH 2, 1892.]

Chattel Mortgages: PRIORITIES: INSTRUCTIONS. In a contest
between mortgagees, where the property was described as
being in the possession of the mortgagor on certain lands de-
scribed in the mortgages, there being no question upon the
weight of evidence, *held*, that the instructions given by the
court were not erroneous and that there was no error in the
record.

ERROR to the district court for Hall county. Tried
below before HARRISON, J.

*O. A. Abbott,* for plaintiff in error.

*Thompson Bros., contra.*

MAXWELL, CH. J.

This is a contest between mortgagees of personal prop-
erty. The defendant claims under a mortgage made to
Frank L. Bartley, dated August 10, 1887, in which the
property is described: "All the mortgagor's animals of the
horse kind, same being at least sixty in number and com-
prising one stallion, eleven geldings, thirty mares (more or
less), and at least twenty colts foaled in 1887. All the
mortgagor's cows, two-year-old heifers, and yearling steers
and heifers, same being at least 600 in number and com-
prising about 300 cows, about 150 two-year-old heifers, and
fifty yearling steers, also all the mortgagor's calves, same
being about 300 in number, together with the natural in-
crease of all of said live stock. The greater part of said
cattle is branded " K " on the right shoulder. The above
described chattels are now in my possession in the vicinity
of St. Michael's, Nebraska, in the counties of Hall, How-

ard, and Buffalo, and owned by me and are free from all incumbrance whatsoever." This mortgage was given to secure the payment of $5,000.

The plaintiff claims under a mortgage executed to it on the 31st day of January, 1888, wherein the property is described as follows, " 500 steers from three to five years old, all branded ' K ' back of right shoulder, all in my pasture on section 12, town 12, range 13 west, in Buffalo county, Nebraska. The above described chattels are now in my possession, are owned by me, and free from all incumbrances whatever." This mortgage was given to secure the payment of the sum of $10,000.

The plaintiff also claims that there was a verbal agreement made on the 5th day of July, 1888. The defendant took possession of the cattle under its mortgage, whereupon the plaintiff brought an action for the conversion of " sixty-five head of steers, part two and part three years old, part branded 'K' on the left side, and part without brands." On the trial of the cause the jury returned a verdict for the defendants, upon which judgment was rendered. It will be observed that the descriptions in both mortgages are very general, and but for the statement that the animals were then in possession of the mortgagor on certain lands described in the mortgage, they would be of doubtful sufficiency. The court gave the following instructions:

"Plaintiff alleges in his petition that on or about the 9th day of July, A. D. 1888, the plaintiff was the owner and in possession of a large number of cattle of various ages, which said cattle were then in the custody and care of one Asa Brayton for agistment, and that on said date the said defendant, by its agents and servants, unlawfully and without the permission of the plaintiff, took and drove away sixty-five head of said cattle, described as follows, to-wit: Sixty-five head of steers, part two and part three years old, part branded 'K' on the left side, and a part without

brands, of the value of $2,000, and afterwards converted the same to its own use; that plaintiff has frequently requested said defendant to return said cattle, or pay the plaintiff the value thereof, which it has and still does neglect and refuse to do, to the damage of plaintiff in the sum of $2,000, for which sum plaintiff claims judgment, with interest thereon at the rate of seven per cent per annum from July 9, A. D. 1888.  The plaintiff claims a special ownership under and by virtue of certain chattel mortgages introduced in evidence. Defendant, for answer, states that it denies that it did, on the 9th day of July, 1888, either by itself or agents, or otherwise, or at any other time, take and drive away from the said Asa Brayton, or from any other place, sixty-five head of cattle belonging to and owned by the said plaintiff, either as described in the said plaintiff's petition or in any other way, and denies that plaintiff was the owner of the sixty-five head of cattle described and mentioned in its said petition, or any of them; denies that said defendant converted the said sixty-five head of cattle to its own use, as described in the said petition, or in any other manner; denies the indebtedness, and denies all other allegations of plaintiff's petition, except that it is a corporation.  The defendant claims that it took possession of and sold said cattle under and by virtue of a chattel mortgage introduced in evidence in the case.

"First—You are instructed that when a person is in the rightful and peaceful possession of property, and a person not the owner, general or special, or entitled to the possession, wrongfully takes it from him and converts to the taker's own use, then the person who was so rightfully and in peaceful possession of the property can recover the full value of the property in this form of action for the wrong done, his possession being sufficient evidence of title in him against a wrong-doer or one showing no right or title of the property.

"Second—You are instructed that possession of personal

property is *prima facie* evidence of ownership if there are no circumstances accompanying the possession to rebut such presumption, and if the jury believe from the evidence that the plaintiff was in possession of the cattle in controversy at the time of the alleged taking, and under circumstances indicating ownership in it, then it is incumbent upon the defendant to show by a preponderance of testimony that the title or ownership, or special ownership claimed by it, was not in the plaintiff, and unless the defendant has done so you should find for the plaintiff as to such ownership.

"Third—The jury are instructed that although it is a general rule of law that possession of personal property is *prima facie* evidence of title in the person in possession, still the possession may be accompanied by such circumstances as to rebut such presumption, and so in this case, although the jury may find from the evidence that the plaintiff was, on or about the 9th day of July, 1888, in possession of the cattle in controversy, still if the jury further find from the evidence that such possession was attended or accompanied by such circumstances as rebut the presumption of ownership arising from such possession, then such possession is not of itself alone even *prima facie* evidence of ownership in the plaintiff.

"Fourth—The court instructs the jury that in order to maintain the action in this case as to the said cattle, or any number of them, the plaintiff must prove by a preponderance of the evidence that it had such an interest in said property as entitled it to the immediate possession of the same at the time of the alleged wrongful taking; and if you find from the evidence and the instructions of the court that he has failed to prove this by a preponderance of the evidence, then you should find for the defendant.

"Fifth—You are instructed that to warrant a verdict in this case for the plaintiff the jury must find from the evidence not only that the plaintiff had such an ownership

in the property as entitled it to the immediate possession at the time of the alleged conversion, but it must further appear from the evidence that the defendant wrongfully converted the property to its own use.

"Sixth—In order to recover in this case the plaintiff must show, by a preponderance of the evidence, that right to possession which it claims under and by virtue of the mortgages introduced in evidence in its behalf as evidence of its title to the cattle in question was stronger and was superior to the right of defendant to possession under the mortgage as introduced by the defendant as evidence of its title at the time of the taking.

"Seventh—You are instructed that if you find from a preponderance of the evidence that at the time of the alleged conversion the plaintiff had such ownership in said sixty-five cattle or any of them as entitled it to the possession of said cattle or any number of them, and that while the plaintiff had such ownership and was so entitled to such possession, and before the commencement of this suit, the defendant wrongfully took the cattle into its possession and sold the same before the commencement of this suit, this will constitute a wrongful conversion of such or any number of cattle you find were so taken and converted, if any, you will find for plaintiff and assess his damages at the value of the plaintiff's possession of such cattle as shown by the evidence."

The court refused to give the following instructions:

"First—The jury are instructed that a verbal pledge of property for a debt followed by possession will entitle the party receiving said property under such pledge to hold the same for the satisfaction of the debt for which the same was pledged.

"Second—The jury are instructed that in order to entitle the defendant to recover you must find that the mortgage under which it claims was sufficiently definite to enable a stranger to identify the stock described

10

therein at the time the plaintiff received the cattle from said Kyne."

These instructions seem to have submitted the questions as presented by the testimony fairly to the jury, and there was no error in refusing those asked, as they, in substance, had already been given, except the request in regard to a verbal mortgage, which does not seem to have been appliable to the proof in this case. There is no material error apparent in the record, and the judgment is

AFFIRMED.

THE other judges concur.