# CHARLESTON.

## JUSTICE *v.* MOORE, TRUSTEE.

Submitted June 3, 1910.     Decided March 14, 1911.

1. DETINUE—*Pleading—Allegation of Value.*
    A declaration in detinue for saw logs, stating the average

value of each and the aggregate value of all, suffices as to specification of value. (p. 53).

2. LOGS AND LOGGING—*Vendor's Lien.*

A vendor of timber, severed from his land by the vendee, under a written contract, may, in the absence of a stipulation to the contrary, retain possession thereof, to secure payment of the purchase money, although the title has passed to the vendee, and such right of retention is not relinquished nor destroyed by a clause in the contract, saying the timber shall "stand good for the purchase money," (p. 54).

3. CHATTEL MORTGAGES—*Vendor's Lien.*

If the vendee in such case execute a deed of trust upon the property so sold, while it remains upon the lands of the vendor, the right of the trustee therein to possession of the timber is subordinate to that of the vendor. (p. 54).

4. DETINUE—*Right of Action—Sufficiency of Possession.*

If a vendor, having such right of possession, re-purchase the timber in consideration of his claim for purchase money, after execution of the deed of trust and with notice thereof, and then make delivery of the same, under a contract of sale from him to a stranger, at a place on his own land or land of another under a license secured by him for the purpose, and thereafter the trustee in the deed of trust take possession of the same, such vendor has sufficient prior possession to enable him to maintain detinue against the trustee. (p. 55).

5. SAME—*Defenses—Outstanding Title in Third Person.*

A defendant in an action of detinue cannot set up, against a plaintiff whose possession he has wrongfully invaded by taking the property, an outstanding title in a third person under which he does not claim. (p. 56).

Error to Circuit Court, Logan County.

Action by W. E. Justice against J. M. Moore, trustee. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Lilly & Shrewsbury,* for plaintiff in error.

*Campbell, Brown & Davis,* for defendant in error.

POFFENBARGER, JUDGE:

Right to the possession of certain saw logs is the matter involved in the judgment to which this writ of error was obtained. W. E. Justice, by a written contract, dated Jan. 18, 1896, sold

to Aaron Browning & Co. certain poplar trees, divided into classes, according to size, for determination of purchase prices, which were one dollar and two dollars per tree. Along with the timber, he sold a log cart at the price of $60.00. The last sentence in the contract reads as follows: "The said timber to stand good for the purchase money and expense." Under it, the Brownings cut the timber and marketed a portion of it. In so doing, they became indebted to Justice for goods and supplies to the amount of $300.00, and the stumpage or price of the timber amounted to $500.00. For these two items, amounting to $800.00, a note was given. The Brownings also incurred indebtedness, for merchandise and supplies, to the Standard Mercantile Company, of which U. B. Buskirk was president and manager. To secure this, they executed a deed of trust on the timber, dated Jan. 15, 1897, in which J. M. Moore and Joseph Anderson were made trustees. Having become financially embarrassed and unable to complete their timber enterprise, the Brownings, sometime in the same year, re-sold the timber, or relinquished their rights and interest in it, to Justice, in consideration of what they owed him, said to be $500.00, payment of $300.00 on the note being claimed. At this time, some of it had been rafted and sold, and the balance, having been cut down, lay in the woods as felled trees on the land of Justice. He cut them up into logs, 216 in number, hauled them to the Guyandotte River, at the Mouth of Leatherwood Creek, branded them and put some of them over the bank and into the river, and sold them to Newman & Spanner along with other timber and they measured branded and paid for them. As to the exact condition he left them in, there is some controversy. At this juncture, Moore, the trustee in the deed of trust, and Buskirk appeared upon the scene, claiming title to the logs and right of possession, branded, took possession of, and advertised, them for sale under the deed of trust. Thereupon Justice brought this action of detinue, regained possession of the logs, by giving a bond, and, after some two or three abortive jury trials, a verdict and judgment that he retain possession thereof. In the meantime, Newman & Spanner were permitted by Justice to take them under their purchase from him.

The demurrer to the declaration, founded upon alleged in-

sufficiency of specification of the value of the property, was properly overruled. The declaration demands 216 saw logs of the average value of $5.25 and a total value of $1,134.00. Good pleading in detinue requires specification of the value of each article sued for. The purpose of this is to give the defendant notice of what is demanded of him. It is not the function of the declaration to fix unalterably the value of the property, but only to apprize the defendant of the nature and the amount of the demand. The averment of value in this declaration puts a price upon each log. It may be, in some instances, too high, and, in others, too low, but the actual value is a matter for determination upon the evidence. We think the declaration sufficient.

The giving of two instructions, at the instance of the plaintiff, is assigned as error. One of these told the jury they should find for the plaintiff, if they believed from the evidence that Buskirk, president of the Standard Mercantile Company, had notice of the contract for the purchase of the timber at the time he took the deed of trust; and the other, that the plaintiff could maintain his action, if the jury should find the logs had not been put into the stream by him, in pursuance of the contract to sell them to Newman & Spanner, at the time at which Moore, the trustee, took possession of them.

The first of these two instructions proceeds upon the theory of a right of retention of the possession of the timber in the plaintiff, to secure payment of his purchase money, founded upon the clause in the contract of sale, saying the timber was to stand good for the purchase money and expense, notice of which to the mercantile company, at the time it took the deed of trust is indicated by some evidence adduced. The clause upon which Justice relies for this claim is not as broad in its terms as those considered and enforced in *Buskirk Bros.* v. *Peck,* 57 W. Va. 360, and *Wiggin* v. *Mankin,* 65 W. Va. 219. In each of those cases, the contract expressly stated that the timber or lumber should not be removed until paid for. This clause says only that the timber shall stand good for the purchase money. Right of retention of possession is not in terms reserved, and the purchasers were allowed to remove and sell some of the timber without having paid for it. The seller also took the promissory note

of the purchasers for it. This conduct, however, is not ir-reconcilable with right of retention. His release of part of it does not necessarily imply intent to release the residue. Though the lien clause does not expressly reserve right to detain the timber until paid for, the vendor had such right as long as it remained upon his land, under principles declared in *Curlin* v *Isaacson,* 36 W. Va. 391. It is a common law right in the seller which the lien clause in the contract does not relinquish in express terms nor by necessary implication. This clause could have been intended to secure to the seller a lien in ad-dition to that given by the common law, one continuing after removal from the premises, and may have been inserted in the contract for this purpose. Jones on Liens, section 816. How-ever this may be, nothing in its terms indicates intent to abrogate the seller's common law lien. As this timber was all on the premises of the plaintiff at the date of the execution of the deed of trust, the right created by that instrument, as to possession, was necessarily subordinate to that of Justice. By it, the trustee secured only such right as the vendees of the timber had under their contract. They may have had title, but, if so, they had no right to possession, and, therefore, could not confer it upon the trustee otherwise than subject to the pre-cedent condition, that of payment of the purchase money before removal. This instruction was good, therefore, unless the di-rection in it to find for the plaintiff was improper for some reason other than that based upon the defendant's claim as to the con-struction of the contract between Justice and the Brownings.

Whether it is bad for such other reason depends upon the inquiry raised by said second instruction, the theory of which is that the plaintiff was not barred of right of recovery by reason of his sale of the timber to Newman & Spanner. Though he took the timber back from the Brownings in satisfaction of his claim for purchase money, he could fall back on his original lien and right of retention, if his right as purchaser from the Brownings failed, and pass that right to Newman & Spanner. As to this, we have no doubt. His purchase was subject to the trust deed lien, but his own lien, prior and his right to possession superior, unless lost by the sale to Newman & Spanner. But said second instruction enunciates the principle that a defend-

ant in detinue cannot defeat the plaintiff's action by showing an outstanding title in a third person, unless he claims under it. As the defendant here does not claim under Newman & Spanner, but only under the Brownings, he has not connected himself with their outstanding title. Hence, if the theory of the instruction is legally sound, we must ascertain whether it applies under the circumstances of this case. If the plaintiff has not had previous possession, but relies solely upon legal title in himself, his action may be defeated by showing an outstanding title in a third person. Under such circumstances, the question is one of title pure and simple, and the plaintiff, in order to prevail, must show that he has it, as in the case of ejectment and unlawful detainer. 14 Cyc. 248; 6 Ency. Pl. & Pr. 657. But, if the defendant has acquired his possession by a wrongful invasion of the actual possession of the plaintiff, then, under a principle observed in ejectment and unlawful detainer law, he cannot prevail by showing outstanding title or right in a third person, unless he claims under, or connects himself with, it in some way. As to this exception to the general rule, there is some conflict in the decisions, but the decided weight of authority as well as reason sustains it. 14 Cyc. 248. "Where, however, a plaintiff in detinue has shown a prior possession and made out a *prima facie* case, the defendant cannot defeat a recovery by showing merely an outstanding title in a third person, without connecting himself therewith." 6 Ency. Pl. & Pr. 657. See also *Miller* v. *Jones,* 26 Ala. 247; *Hall* v. *Chapman,* 35 Ala. 559; *Gafford* v. *Sterns,* 51 Ala. 431; *Tanner* v. *Allison,* 3 Dana (Ky.) 422; *Townsend* v. *Burton,* 24 S. W. 1069; *Banking Co.* v. *Bank,* 34 Neb. 93; *Calvit* v. *Cloud,* 14 Tex. 53. If, therefore the plaintiff had possession and was ousted thereof by the defendant, the case falls within the exception and the title of Newman & Spanner cannot be relied upon as a defense.

The other members of the Court are of the opinion that the plaintiff had sufficient possession to claim the benefit of this exception. His written contract with Newman & Spanner required him to deliver the logs on the banks of Leatherwood Creek and Guyandotte River, there to be measured and paid for by the purchasers. He had made delivery thereof at the places designated and the purchasers had measured, branded and

paid for the logs. No further obligation rested upon the plaintiff, except a duty to roll the logs into the streams. Whether they were on his land is not shown by the record. If they were, his continued possession thereof would seem to be clear, as their presence on his land would indicate a bailment or custody of the same for and on behalf of his vendees. It seems to me, that, to make out a case of continued possession, he should have shown, if he could, that the logs were still upon his premises. For this omission in the proof, I would hold his possession did not continue and that the further requirement of the contract was one of mere service for the purchasers. In other words, I think his contract was so far executed as to divest him of title, actual possession and right of possession, and the service he owed the purchasers had been substantially performed, as nearly all the logs were down over the banks of the streams. The other members of the Court, however think they were either upon land owned by him, or land which he had the right to use for deposit thereof, and, therefore, his own land for the purposes of this case, and, as some of the logs were still on top of the banks, he was bound to bestow further labor upon them. This conclusion relieves said first instruction of the possible objection to it above noted, and also sustains the action of the court in giving the second, excluding the defense of title in Newman & Spanner. My own conclusion would render both instructions bad and reverse the judgement.

For the reasons stated, the judgment will be affirmed.

*Affirmed.*