GEISER MANUFACTURING COMPANY *v.* DAVIS.

Opinion delivered December 15, 1913.

1. REPLEVIN—RIGHT OF MORTGAGEE TO POSSESSION.—Appellant sold property to appellee, taking notes in payment and a chattel mortgage on the property to secure the same; the appellee, failing to pay the notes, appellant took possession of the property without appellee's consent. Under the terms of the contract, appellant was entitled to possession of the chattels while the mortgage debt remained unpaid, and, having the legal title and right of pos-

session, appellee could not recover possession of the chattels until he paid the debt. (Page 452.)

2. REPLEVIN—RIGHT TO POSSESSION OF CHATTEL.—The true owner of a chattel may defend his possession even though it was forcibly obtained from another without the latter's consent. (Page 453.)

3. MORTGAGES—FORECLOSURE—SET-OFF.—Under Kirby's Digest, § 6869, which provides that in an action to foreclose any mortgage or to replevy personal property under the same, that the defendant shall have the right to prove any set-off to which he may be entitled under said mortgage, the motgragor will be entitled to exercise said right, where the mortgagor brought an action against the mortgagee for possession of the mortgaged property, and the mortgagee by cross complaint asserted its right to foreclose the mortgage. (Page 455.)

Appeal from Carroll Circuit Court, Eastern District; *J. S. Maples,* Judge; reversed.

*C. A. Fuller,* for appellants.

1. Oral evidence is not admissible to vary or contradict a written instrument, and the verdict is contrary to the evidence.

2. Improper argument of counsel was allowed by the court.

3. Instruction 5 was palpable error.

4. Instruction G is also erroneous, and the verdict is so unjust and unreasonable that it is shocking to a sense of justice.

*Festus O. Butt,* for appellee.

1. Instruction 5, taken in connection with the other instructions given, states the law correctly. 47 Ark. 378; 38 *Id.* 413; 87 *Id.* 602; 102 *Id.* 460; 96 *Id.* 531; 96 *Id.* 184.

2. Instruction G is crudely drawn and practically means nothing. It was properly refused. 84 Ark. 74; 87 *Id.* 602. If any instruction was bad, a good one can not be saved by a general objection. 86 Ark. 103; 75 *Id.* 182; 76 *Id.* 41, 482; 80 *Id.* 528; 87 *Id.* 614.

3. In replevin the mere fact of lawful possession in plaintiff, and wrongful taking by defendant is sufficient. Proof of transfer by title is unnecessary. 38 Ark. 413.

McCulloch, C. J.  Appellee instituted this action against appellant in the circuit court for the Eastern District of Carroll County to recover possession of a sawmill outfit.  He alleged that he was the owner of said property and that appellant had wrongfully taken possession of same and refused to surrender it.

Appellant answered, denying that the property belonged to appellee.  The answer contained a cross complaint, alleging that appellant had originally sold the property to appellee and that appellee had executed to appellant notes aggregating the sum of $835 for balance of purchase price and a chattel mortgage on said property to secure payment of said notes; that the notes had not been paid and that appellee had subsequently executed to appellant a bill of sale for said property in settlement and satisfaction of the notes.  The prayer of the cross complaint was that, if the bill of sale should be found not to convey to appellant the absolute title to the property, there should be an adjudication of the amount due on the mortgage debt and the same foreclosed.

Appellee filed a reply, admitting the execution of the chattel mortgage to appellant, but alleging that the mortgage debt had been paid in full.

The case was tried before a jury, and the trial resulted in a verdict in favor of appellee for recovery of possession of the property and damages in the sum of $34.

It appears from the testimony that in the year 1907 appellant, being a corporation engaged in the manufacture and sale of sawmill machinery, sold the property in controversy to appellee for the price of $1,075, of which the sum of $240 was paid in cash, and the balance was evidenced by a series of notes aggregating $835, executed by appellee to appellant.  Appellee also executed to appellant a chattel mortgage on the property to secure payment of said notes.  On April 21, 1910, appellee executed to appellant an instrument in writing, reciting the former sale and mortgage and agreeing to execute a bill

of sale to appellant for the property in controversy, and other property, unless as much as $700 of the mortgage debt should be paid within thirty days after that date. On May 26, 1910, appellee executed to appellant a bill of sale purporting to convey to the latter, for the recited consideration of $1, the property in controversy.

Appellee testified that after the execution of said bill of sale he repurchased the property from appellant and paid the mortgage debt, part in money and part by conveyance of a tract of land and a mule. He also testified that appellant's agent had taken possession of the property without his consent and was about to remove it.

The court gave, among other instructions, the following, over appellant's objection:

"5. Even though defendant may have had a mortgage on the property in question, and even though such property was not paid for in full by plaintiff, these facts would not justify defendant in taking possession of said property in the way it did, and said taking under such circumstances will be an unlawful taking and your verdict should be for the plaintiff."

An exception was duly saved and preserved to the giving of that instruction and the ruling of the court is now assigned as error.

The instruction was incorrect as a statement of the law and highly prejudicial to appellant's rights. It amounted to a peremptory instruction in appellee's favor. The effect of the instruction was to tell the jury that because appellant had taken possession of the property without appellee's consent the verdict must be in favor of the latter, even though appellant was the holder of a valid chattel mortgage covering the property and the mortgage debt remained unpaid. If the mortgage debt remained unpaid, appellant was entitled to possession under the terms of the mortgage. Under those circumstances the legal title and right of possession were in appellant, and though possession had been taken without the consent of the mortgagor, the latter can not recover until he pays the debt.

A plaintiff in replevin must recover upon the strength of his own title. There is an exception to that rule when the plaintiff's prior possession had been wrongfully disturbed by a third person not in privity with the true owner. Knox v. Hellums, 38 Ark. 413; Wells on Replevin, p. 56; Justice v. Moore, 69 W. Va. 51; 25 Am. & Eng. Ann. Cas. 17.

But possession by the true owner does not fall within the exception, for he can defend his possession even though forcibly taken from another without consent. In other words, the fact that the owner's possession originated in trespass does not deprive him of the right to hold against the person from whom he gained possession. The rule is correctly stated as follows:

"The prior possession of personal property is a sufficient title as against one who by trespass takes the property from the possession of the plaintiff, and who does not connect his right to do so with the title of the true owner, but the prior possession unconnected with any special interest in the property or right to retain possession will not sustain an action of replevin against the true owner, though the latter, in taking the property from the possession of the former, committed a breach of the peace." 24 Am. & Eng. Enc. of Law, p. 485.

This statement of the law is supported by the authorities and we find none in conflict with it.

The Missouri Court of Appeals stated the law on the subject as follows:

"The owner of a chattel may, unless disabled by contract or by special circumstances, resume possession of it wherever he may chance to find it, using such reasonable force as may be necessary to that end. In this respect there is a difference between real and personal property. The statute relating to forcible entry and detainer, on grounds of public policy and with the view of preventing breaches of the peace, requires the owner or person entitled to the right of possession of real property, the possession of which is forcibly withheld from him, to resort to legal process in order to regain posses-

454      GEISER MANUFACTURING CO. v. DAVIS.      [110

sion. But there is no such statute or rule of law relating to personal property. Hence, the fact that the plaintiff may have had possession of the horse in controversy, under a claim of ownership, and that the defendant obtained possession of it by force, was an immaterial inquiry. The question was, who was the real owner?" *McMahill* v. *Walker,* 22 Mo. App. 170.

In an early Tennessee case the following summary of the law on this subject is stated:

"1. The action of replevin is substantially an action of detinue, and in order to recover in such action the plaintiff must show a right of possession as against the defendant. 2. * * * 3. That the owner of personal property has the right to take peaceable possession of it wherever he may find it, but that he has no right to take a forcible or violent possession of it. 4. That if such owner do take forcible and violent possession of his property, he is only liable in an action of trespass for the damages done by him by reason of such forcible and violent action, but not in an action for the property specifically brought." *Bogard* v. *Jones,* 9 Humphreys (Tenn.) 739.

This court has, in effect, announced the same principle in two cases: *McClure* v. *Hill,* 36 Ark. 268, and *Jones* v. *Horn,* 51 Ark. 19. In both of those cases the mortgagee had wrongfully taken possession of the mortgaged property and converted the same to his own use, and the mortgagor sued for the conversion. The court in each case announced the principle that "where the defendant is a mortgagee who was entitled to the possession, with power to sell at the time of the seizure or conversion, and who has become a wrong-doer by reason of the manner of acquiring possession, or in the irregularity of the sale, he is liable to the mortgagor (in the absence of proof of special damages) only for the value of the property at the time of the conversion, less the amount of the mortgage debt."

The same principle is involved in an action of replevin by the mortgagor to regain possession of the

property where the mortgagee has become a wrong-doer only "by reason of the manner of acquiring possession," for in that case, though he obtained possession in a wrongful manner, his possession is rightful and he may retain it.   So, in the present case, if appellant is the holder of a valid mortgage on the property, he has the right to hold it for the purpose of foreclosing the mortgage.   His manner of obtaining possession is unimportant unless special damages arising from the manner in which possession was taken be proved.

Appellant sought to have adjudicated in this case the amount of the unpaid mortgage debt, and the statutes of this State authorize that to be done in a replevin suit.   The statute reads as follows:

"In any action in a justice court, or circuit court of this State, where it is attempted to foreclose any mortgage, deed of trust or to replevy, under such mortgage, deed of trust or other instrument, any personal property, the defendant or defendants in said action shall have the right to prove or show any payment or payments or setoff under such said mortgage, deed of trust or other instrument, and judgment shall be rendered for the property or the balance due thereon, and the defendant may pay the judgment for the balance due and costs within ten days and satisfy the judgment and retain the property."   Kirby's Digest, § 6869.

This action was instituted by appellee, but appellant, by cross complaint, asserted its right to foreclose the mortgage, and the statute is broad enough to cover the issues joined in the case concerning the alleged payment of the debt.

It follows that the ruling of the court in giving the instruction quoted above constituted prejudicial error which calls for a reversal.

The testimony of appellee as to the time of the alleged payment is so vague that we will not undertake to lay down any rule as to its competency further than to say that he should not be permitted to contradict the written instruments he executed evidencing the contract

between the parties. The bill of sale, dated May 26, 1910, did not, however, specify any amount of unpaid balance on the notes, and testimony as to payments prior to the execution of that instrument would be admissible for the purpose of establishing the amount, if any, of the unpaid mortgage debt.

The testimony of appellee concerning the alleged re-purchase of the property from appellant after the execution of the bill of sale of May 26, 1910, is also indefinite. He does not state whether the sale was absolute or conditional. Of course, if there was a cancellation of the mortgage by a settlement of the mortgage debt and an unconditional sale of the property made to appellee, then his title was complete and the prior mortgage would play no part in the controversy.

Those are questions which may be threshed out in another trial where the evidence can, perhaps, be made more definite.

Appellee entered a plea of the statute of limitations against the mortgage debt, but according to the undisputed evidence that plea was not well founded, for the suit was commenced within five years from the date of the maturity of each of the notes.

·Reversed and remanded for a new trial.