# CHARLESTON.

## MORRIS v. THE JOURNAL COMPANY.

Submitted April 14, 1917. Decided May 15, 1917.

1. EVIDENCE—*Possession of Personal Property—Declaration—Admissions.*

   The possession of personal property is prima facie evidence of title thereto, and when the title is involved, the general rule is that the declarations and admissions of those having the possession in relation to such property may be admitted in evidence to determine the nature of such possession, although not made in the presence of the adverse claimant of the property. (p. 537).

2. ESTOPPEL—*Conduct—Title to Personality.*

   When one by his silence and conduct leads another to purchase personal property or stands by when such property is about to be or is being sold without notice of his claim thereto, he will be estopped from thereafter asserting any right or title to such property as against an innocent purchaser thereof. (p. 538).

Error to Circuit Court, Wood County.

Action by Will Morris against the Journal Company. Judgment for plaintiff, and defendant brings error.

*Reversed, verdict set aside, new trial granted.*

*Marshall & Forrer,* for plaintiff in error.

*Brown & Blizzard* and *R. H. Piggott,* for defendant in error.

MILLER, JUDGE:

In detinue plaintiff recovered a verdict and judgment for the possession of one Mergenthaler linotype machine number 76, or in the alternative one hundred and twelve dollars and ninety one cents, the value thereof, as found by the jury. The correctness of this judgment is challenged by defendant upon this writ of error.

To reverse the judgment reliance is placed mainly on alleged errors committed on the trial in the admission and rejection of evidence, and the refusing of defendant's instructions to the jury, and the real issue presented and involved in all the rulings of the court complained of was whether plaintiff or defendant had title to and right of possession of the property sued for.

The record shows that the machine involved was originally purchased from the Mergenthaler Linotype Company, of New York City, in December, 1903. The negotiations therefor were begun by plaintiff, then secretary of The State Journal Company, a corporation, and of which his father P. W. Morris, was president and principal stockholder, and with which his brothers Ben, Robert, and Leland, perhaps, were in one way or another connected; but it appears that the sale of the machine was made nominally at least to a corporation organized by plaintiff, named the Labor Printery, and of which he was secretary-treasurer, and his brother Ben, president, and one or more of his brothers and perhaps sisters were nominal stockholders. The machine itself was delivered into the building owned by P. W. Morris, but occupied by and known as The State Journal Building, where it thereafter remained, installed and used in the business of

The State Journal Company, until removed by defendant as hereinafter stated. It was never in the possession of, or run or operated by the Labor Printery, or by any other person or concern than the State Journal Company, or its successor, lastly, the defendant, The Journal Company. Plaintiff swore that he made the cash payment of $700.00, either by the cashier's check or by his personal check on the First National Bank of Parkersburg, but though called for on cross-examination he neither produced the check nor accounted for its loss. The letter transmitting the check was written by him on a letter head of The State Journal Company, in which he does not describe the check, other than as a check for $700.00, and for the deferred payments, notes of the so called Labor Printery were executed, and in the contract of sale a lien was reserved on the machine for the unpaid purchase money. All the notes were subsequently paid by The State Journal Company, and a release of the lien was secured and recorded by it. The plaintiff himself never had actual possession of the machine.

The only papers relied on by plaintiff to show title to and right of possession of the machine consisted of: (1) A bill of sale from the Traders Herald Company, which he says was a co-partnership, dated August 11, 1905, signed "The Traders Herald Company, by A. H. Hough, Mgr." The consideration recited therein is the sum of five hundred dollars, cash in hand paid, and the assumption by plaintiff of the indebtedness due the Mergenthaler Linotype Company, amounting to $2500.00 with interest; (2) A lease bearing the same date and purporting to have been executed by him as lessor, to the State Journal Company, and signed also "The State Journal Company, per P. W. Morris," the lessee, and which recites the indebtedness of $2500.00, to the Mergenthaler Linotype Company, which the lessee agrees to pay off and cancel and to allow the lessor for the use of said machine a yearly rental of $480.00, until reimbursed for the money paid the Mergenthaler Linotype Company, when it was to be turned over to plaintiff in good working condition. This lease also provided that the lessee should keep the machine insured as required by the Mergenthaler Linotype Company.

Plaintiff introduced no deed or other writing evidencing a sale or transfer of the machine by the Labor Printery, to the said Traders Herald Company, nor any minute of its board of directors authorizing such sale or transfer; his testimony and only claim was that the Labor Printery was his concern. In one place he says he sold the machine to the Traders Herald Company; in another that the corporation sold it, but he swears the note of the latter company for $500.00 was executed to him. When asked in one place to whom the Labor Printery sold it, his answer was: "Conditionally, to the Traders Herald Company, for instance." When recalled for further cross-examination plaintiff was asked by the court: "When was it you leased this machine to the State Journal Company?" His answer was: "Well, really before the machine was purchased arrangements had been made to lease the machine to the State Journal Company, at a rental of $500.00 a year." Plaintiff never collected any rent or demanded any rent for the machine until it was purchased by the defendant and moved by it into its new building in November, 1915, after it purchased it from the Citizens National Bank, March 27, 1915.

Defendant for paper title relied on and except the first paper was permitted to introduce in evidence, (1) A bill of sale dated March 27, 1915, from the Citizens National Bank, covering all the property of the old State Journal Company, then owned by it, and calling for three linotype machines, including the one sued for; (2) A deed from Mason G. Ambler, trustee, to the Citizens National Bank of Parkersburg, dated February 27, 1913, reciting the sale by him to said bank under three deeds of trust executed to him by said State Journal Company, the first dated December 3, 1908; the second May 31, 1910, and the third June 7, 1910, and by general and particular description covering all the property and plant of the said State Journal Company; (3) The three deeds of trust to Ambler, trustee, just referred to.

The court at first permitted the defendant to introduce the first of said title papers, but later, on motion of the plaintiff, struck it out. But the oral evidence of the witnesses as to the sale and purchase of the property from the Citizens

National Bank to defendant company remained in the record. The deeds of trust to Ambler, trustee, covered two linotype machines, numbers 3055 and 3056, ''and all property constituting the plant and machinery of the said State Journal Company''; and the deed which he made to the Citizens National Bank, describes the property sold as it was described in the deeds of trust to him. The bill of sale referred to, being the first paper introduced by the defendant, called for three linotype machines, and it is conceded that if the linotype machine now in controversy belonged to the State Journal Company, the language of these deeds was sufficient to convey it to the trustee, and by him to the purchaser. It is also conceded, and the evidence proves beyond question, that from the time of its purchase in 1904, this machine remained in the absolute and exclusive possession of the State Journal Company, in the building occupied by it, and installed along and connected up with its other machinery, and was used and operated by it, as a part of its plant, and that before the sale by the trustee it was listed and inventoried by Robert McFarland and by at least one of the Morris boys in charge of the plant as belonging to the State Journal Company.

In connection with the deeds and title papers thus offered in evidence, defendant proposed to introduce in evidence, but on objection was denied the right to do so, a number of letters, written by P. W. Morris, president of the State Journal Company, to the Mergenthaler Linotype Company, and marked for identification, Exhibits No. 2, 3, 4, 5, and 6, showing the dealings between the State Journal Company and the Merganthaler Linotype Company, with reference to said machine, and explaining its possession thereof, and how the same was held by said company, and remitting payments thereon, but in none of which was it said that the State Journal Company was in possession of said machine under a lease either from the Labor Printery or the plaintiff Morris. In the first of said letters he wrote that not much could be expected from the Labor Printery, but that the State Journal Company was solvent, and requested the linotype company thereafter to address its letters to the State Journal Company, instead of the Labor Printery. In the second of said

letters it is said the State Journal Company is trying to pay off the obligations of the Labor Printery to the linotype company, and expect to succeed, that the arrangement was one into which the State Journal Company did not originally enter "but took the machine you sold the Labor Printery off its hands expecting to assume the obligation of that concern." The third letter is an apology for not remitting payments past due and asking for time or extension of credit. In the fourth letter the writer says: "The machine was put in the State Journal establishment when it was first purchased. It had to be taken over by the State Journal Company for the reason that on account of a strike here the Labor Printery did not materialize as a business concern"; and lastly it was said that "the State Journal has practically this interest in the machine that it uses it and has paid nearly all that has ever been paid on it." In the last letter it was said among other things, "It was not the State Journal's purchase and fell on our hands in the way that has been detailed in letters to you."

In addition to this documentary evidence defendant also proposed in one or more instances to prove who the other officers and directors of the State Journal Company were at various times between the date of the purchase of the machine sued for and the date it was purchased by the defendant, and also to prove that prior to the sale of the property by Ambler, trustee, under the several deeds of trust, inventories of the property were made by Ben Morris and Robert Morris, which included this machine and that the same was pointed out to McFarland, who inventoried the property for the bank, as the property of the State Journal Company. But the court would not permit defendant to introduce this evidence, in the absence of proof of knowledge thereof by the plaintiff Morris, and in every instance limited defendant in its proof to such representations or admissions on the part of the State Journal Company, or its officers, as it might show were made in the presence of, or with the knowledge and acquiescence of the plaintiff.

All these adverse rulings and other rulings of the same character are the subjects of sundry bills of exceptions, and

the first question we will consider is, were these rulings erroneous. The circuit court seems to have tried the case upon the theory that plaintiff by his evidence had established a clear legal title and right to the possession of the machine, and that no evidence should be allowed to impeach or affect the validity or genuineness of his title papers, unless the things said or done were in his presence or with his knowledge and consent. As one of the bill of exceptions shows, the court would not allow defendant to introduce any evidence showing outstanding title in the Labor Printery, apparently on the theory that neither the State Journal Company, nor its successors in title, should be allowed to impeach or question the title of Morris, as lessor, under the lease of August 11, 1905. Was this the correct view of the case as presented?

The theory of defendant was that though the original purchase of the machine was in the name of the Labor Printery, the real purchaser was the State Journal Company; that this company and not the plaintiff had paid for the machine, and that the papers executed inter partes were mere self serving declarations for some purpose not fully disclosed by the record, but in the interest of or on the behalf of the State Journal Company, and that the letters written by the State Journal Company to the Mergenthaler Linotype Company, and the subsequent declarations and dealings of its officers with reference to this machine, explaining the possession of the State Journal Company, were competent to go in evidence on its theory of the case.

The possession of personal property is prima facie evidence of title thereto; and the general rule seems to be that the declarations of the possessor of personal property concerning the same are admissible in evidence where the title is involved to determine the nature of such possession, although not made in the presence of the one claiming ownership in the property; that such declarations are admissible as part of the res gestae. *Avery* v. *Clemons*, 18 Conn. 306, 46 Am. Dec. 323; *Abney* v. *Kingsland*, 44 Am. Dec. 491, and cases cited in note; *Redfield* v. *Buck*, 35 Conn. 337. In *Martin* v. *Hardesty*, 62 Am. Dec. 773, it is said: "It was proper to prove

that, having the possession, he said he was the owner, as this was explanatory of the possession, showing that he held the slave in his own right." In *Reiley* v. *Haynes,* 16 Pac. 440, it is said: "Declarations by a party to the action, in possession of personal property, as to her ownership thereof, accompanying some principal fact which may serve to explain and qualify, are sometimes said to be a part of the res gestae." In 1 R. C. L. 490, it is said, among other things: "Again, the declarations of a person in the possession of property are held to be admissible when explanatory of such possession, and especially when accompanying some equivocal act which they serve to explain and qualify. And this is true although the declarations are self-serving in character. Such declarations have been admitted to establish title in another person," etc. And it is laid down by this writer and by other text books and decided cases that where, as in this case, plaintiff never had possession of the property, and relies solely upon title in himself, it was competent for the defendant to show an outstanding title in another person. 2 Jones on Evidence, sections 268, 269, and 351; Burk's Pleading and Practice 212; 14 Cyc. 248; *Justice* v. *Moore,* 69 W. Va. 51. Upon the principles of these authorities we are of opinion that the evidence rejected was competent to go to the jury on defendant's theory of the case.

Respecting the instructions, defendant proposed eleven, four of which, numbers three, four, five and eight, were given, and although the bill of exceptions covers the rejection of the remainder of said instructions, the errors assigned therein applied only to instructions numbers one, six, seven, nine, ten, and eleven, and of these the points made against numbers one, six, seven, and eleven are distinctly withdrawn, for various reasons assigned, mainly for want of evidence to support them.

Instruction number nine would have told the jury that "if they believed from the evidence that the plaintiff by his silence and conduct lead the Journal Company and its predecessor in title, the Citizens National Bank, to purchase the machine in controversy without notice of his claim of title, then he is estopped from claiming the property for his own

and they should find for the defendant.'' We think this instruction affirms a correct legal proposition, and ought to have been given if there was evidence to support the facts assumed therein. When the evidence, which we have concluded the court erroneously rejected, is in, if not on the record as made up on the trial, the jury might infer knowledge and notice upon the part of Morris sufficient to estop him, as against the defendant, from asserting an adverse claim of title. His right under his alleged lease to the State Journal Company, if a valid contract, to demand possession of the machine, had long before the purchase thereof by defendant fully matured. He admits that he never made demand for the machine or rent for its use. The debt to the Mergenthaler Company was fully paid off in December, 1909. If plaintiff's right to possession accrued at that time he was barred by the statute of limitations of five years at the time he instituted this suit. If, on the other hand, the State Journal Company had not been reimbursed by the rent accrued for the purchase money paid the Mergenthaler Company, it is conceded that it would have been so reimbursed for principal and interest paid as early as some time in 1911, and as we have observed this suit was not brought until September, 1915. In the mean time the property had been sold at public auction by the trustee Ambler, and purchased by the Citizens National Bank, in February, 1913, and continued in its possession for more than two years thereafter until it was sold by the bank to the defendant company, in March, 1915. If the defendant had been permitted to show that plaintiff was an officer of the company during this time, and other facts from which notice to him might have been imputed, we think the evidence would have been sufficient to justify the instruction. It was decided as early as *Pickard* v. *Sears*, 6 Adolph. & E. 469, that where the owner of goods permits property to be sold to another he will be estopped thereafter to set up title to the property; and Lord Denman said later, that the doctrine of this case might be stated even more broadly than it was there laid down. He said that a party who negligently or culpably stands by and allows another to contract on the faith and understand-

ing of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving. Bigelow on Estoppel, (6th ed.) 648, 649.

Instruction number ten covers the same subject, but we think it is too limited in its scope, for the purport of it would have been to estop the plaintiff from asserting his title against defendant if only he was an officer or stockholder of the State Journal Company, and notice of the sale under the deeds of trust was published as required by law. To estop one under such circumstances it would be necessary to show more than that he was an officer and stockholder and publication of the notice of sale. Actual notice, or notice equivalent thereto would be necessary in such cases to work an estoppel.

While a bill of exceptions was saved to the giving of plaintiff's instructions, the error therein, if any, is not made the subject of complaint in this court. For the purpose of another trial, we make the general observation, as to one or two of them, however, that questions of law should not be submitted to the jury.

For the errors committed in the trial we are of opinion to reverse the judgment, set aside the verdict, and award defendant a new trial.

*Reversed, verdict set aside, new trial granted.*