CHEROKEE CARPET MILLS, INC.*v.*
WORTHEN BANK AND TRUST CO.

77-197                                        561 S.W. 2d 310

Opinion delivered February 13, 1978
(Division II)

*Anderson & Crumpler,* for appellant.

*Rose, Nash, Williamson, Carroll, Clay & Giroir,* by: *George E. Campbell,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Cherokee Carpet Mills, Inc. entered into a contract with Turner-McCoy, Inc. (sometimes referred to as Turner-McCoy and sometimes as T-M), a construction contractor, on October 5, 1972, for the making of certain improvements to appellant's existing plant for the manufacture of carpets. The contract price was $45,-357. T-M was to furnish all labor and material. T-M was a customer of appellee Worthen Bank & Trust Company. At the time of the contract between Cherokee and T-M, the latter owed the bank $175,000. To secure this indebtedness, T-M had given the bank a mortgage on certain real estate. On October 27, 1972, T-M gave the bank a security interest in all T-M's contract rights, accounts receivable and the proceeds thereof. On February 15, 1973, Cherokee paid $31,-770 to T-M upon the contractor's invoice requesting partial

payment. The check for this payment was deposited by T-M on February 22, 1973, in a general account carried by it in Worthen Bank. The balance credited to this account after this deposit was $42,500. On February 23, 1973, the bank applied this balance to indebtedness of T-M which matured February 5, 1973. On the same day, the bank informed T-M that it was exercising its right of setoff and demanded that T-M furnish it with a list of its accounts receivable, pursuant to the bank's security interest. The list was delivered by T-M on February 24. It indicated that Cherokee owed T-M a balance of $13,347.

T-M failed to pay many suppliers and subcontractors on the Cherokee job. All but one of them filed liens and foreclosure suits against T-M and Cherokee. Cherokee purchased assignments of the claims of all these materialmen and subcontractors. Thereafter Cherokee brought this suit to set aside the setoff of the T-M bank account. The chancery court denied this relief and we affirm.

Cherokee first contends that Worthen had no authority to deduct the general deposit account of T-M, asserting that the bank had knowledge that the funds belonged to others than T-M. Cherokee concedes that a bank generally has authority to set off a depositor's account against his matured indebtedness, but argues that this case comes within an exception to this general rule, which prevents the bank from setting off a debtor's deposit account against his matured debts when the bank has knowledge or can properly be charged with knowledge of the fact that the funds on deposit are a trust fund or that the funds belong to a third person. In *Smith v. Security Bank & Trust Co.*, 196 Ark. 685, 119 S.W. 2d 556, we stated the rule of law applicable as follows:

> It is unquestionably the law that a general deposit of money in a bank passes the title to the bank and establishes the relation of debtor and creditor between the bank and the depositor, and because of this relation, the bank is bound by contract to honor the checks of the depositor to the extent of the deposits and becomes liable if it refuses to do so. No principle of law is better established. (Citations omitted.) However, there is an exception to this rule, that exception being that if the

bank has notice that the funds deposited do not belong to the depositor, it must dishonor a check drawn by the depositor on the account in payment of his individual debts. If it does honor such checks with knowledge that the funds belong to others than the depositor it becomes liable to the rightful owner of the funds. Neither can the bank appropriate such funds in payment of a debt owing by the depositor to it. In other words, the usual right to set off as against an overdue note of the depositor so much of the deposit as is required to discharge the note does not exist.

The facts in this case do not bring it within the exception. It was stipulated that: the bank knew that T-M was a contractor and that the laws of Arkansas permitted liens to be filed by laborers or suppliers for goods and services used in performance of its contracts; the first time the bank had any specific, actual knowledge of T-M's contract with Cherokee and of T-M's outstanding indebtedness to its subcontractors and materialmen was when T-M furnished its list of contract rights and accounts receivable on February 24; T-M maintained the general deposit account, from which it paid all its ordinary business expenses, including payments to subcontractors and materialmen, and a payroll account, from which only those directly employed by T-M were paid.

Cherokee argues that this case is controlled by *Smith* v. *Security Bank & Trust Co.*, supra, but that case has no application to the facts of this one. There the depositor did business as a cattle auction sales and commission company and made an arrangement with the bank whereby he would deposit with the bank each day the total amount of money received by him for sales of cattle of others and the bank would cash all checks drawn on this account payable to the owners for the full sale price of their respective cattle, less the depositor's commission of 4%. These sales continued over a period of several months. The bank there appropriated the proceeds of the depositor's last cattle sale to the depositor's indebtedness to the bank, after a conference at which it was agreed that the bank would loan the depositor additional money and collect whatever the depositor owed the bank from the proceeds of this sale. In the meantime, the indebtedness of the depositor to the bank was increased by the bank's honoring checks

drawn by the depositor to pay personal obligations. There the bank knew all along that the funds being deposited in this account were derived from sales of cattle that did not belong to its depositor and were trust funds and knew that the very funds it appropriated were of the same nature.

In this case there was neither a trust fund nor ownership of the funds deposited by anyone other than the contractor. A partial payment to a contractor by an owner is not held in trust for subcontractors, materialmen, mechanics or employees of the contractor and, even though the contractor is indebted to such persons, he is the owner of the fund and they are not. In the case of the auctioneer, he was never the owner of any of the proceeds of the sale of the cattle of others, except for that part which represented his commission of 4%. Neither Ark. Stat. Ann. §§ 51-601 nor 51-640 (Repl. 1971) makes such payments a trust fund or puts any title to them in those entitled to liens on the improvement for which the payment is made or the land upon which it is constructed. Furthermore, the bank had no notice that T-M had not paid its subcontractors or materialmen and, actually had no knowledge, or reason to know, that T-M had any contract with Cherokee at the time the setoff was made.

Appellant's efforts to fit these funds into the framework of a resulting trust also fall short. The definition upon which it relies is contained in *Mortenson v. Ballard,* 209 Ark. 1, 188 S.W. 2d 749 and 76 Am. Jur. 2d 429, 436, Trusts §§ 196 and 206. To epitomize these definitions a resulting trust presumptively arises where property, real or personal, is bought by one person with money or assets of another, and the title is taken in the name of the purchaser rather than in the name of the owner of the money or assets. These circumstances do not exist here. Even if we consider the definition of a resulting trust in the broad terms stated at 76 Am. Jur. 2d 429, Trusts § 196, we find no resulting trust. There the writer said:

> *** Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person thereby becomes vested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or

presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and although there is an absence of fraud or constructive fraud. ***

We take appellant's position to be that T-M took legal title to the partial payment, but was obligated in equity to hold his legal title for the benefit of the subcontractors and materialmen. Even if we could say this was so, we are still faced with the fact that in the absence of knowledge of the trust relationship by the bank, or of notice sufficient to put it on inquiry, the bank did not become a successor trustee, or liable for the funds deposited. In other words, before the bank would be liable to Cherokee under the resulting trust theory. it would be necessary that it have the same knowledge or notice required to bring it within the purview of the exception to the rule stated in the *Security Bank* case.

Even in states having statutes declaring funds in the hands of contractors for work on public contracts trust funds for the payment of claims of subcontractors and laborers, it is held that the bank in which the funds are deposited in the contractor's general account is not charged with the trust or prevented from making an offset of the account against the debt of the contractor to the bank, in the absence of knowledge or adequate notice of the trust and that there was a beneficiary entitled to the fund or some portion thereof. *Raymond Concrete Pile Co.* v. *Federation Bank & Trust Co.,* 288 N.Y. 452, 43 N.E. 2d 486 (1942), adhered to 48 N.E. 2d 709 (1943); *American Lumberman's Mutual Casualty Co.* v. *Bradley Construction Co.,* 129 N.J. Eq. 278, 19 A. 2d 242 (1941).

When a contractor makes a deposit of funds paid to him on a construction contract into his general account in a bank, the bank has a right to rely upon the presumption that the fund is not a trust fund and that no beneficiary is entitled to any part of the money deposited without making any inquiry, until it has knowledge or adequate notice to the contrary. *Raymond Concrete Pile Co.* v. *Federation Bank & Trust Co.,* supra. There was no showing of either knowledge or adequate notice here.

Cherokee next contends that, by enforcing its security interest in T-M's contract with Cherokee, the bank assumed

responsibility for the performance of the contract, relying upon Ark. Stat. Ann. § 85-9-318 (1) (a) and (b) (Supp. 1977). A complete answer to this contention is that the setoff by the bank was not under its security interest, but was an exercise of its common law right which was supplemented by an agreement set out in the note evidencing T-M's indebtedness to the bank. It was only after the setoff was made that the bank had notice of any contract between T-M and Cherokee.

Cherokee then argues that the equities favor it, pointing out that, after making the setoff, the bank foreclosed the real estate mortgage after it knew of the claims and liens of the subcontractors and materialmen, without joining appellant or any of these subcontractors or materialmen as parties, and that, as a result, after the bank debt was satisfied in the foreclosure action, the holder of a second mortgage also foreclosed and took charge of the assets then remaining. Appellant makes no convincing argument on this point and cites no authority to sustain its position. We are aware of none, so the matter need not be further considered by us. *Dixon v. State*, 260 Ark. 857, 545 S.W. 2d 606; *Hazen v. City of Booneville*, 260 Ark. 871, 545 S.W. 2d 614. We add, however, that we do not feel that Cherokee or the subcontractors or materialmen were either necessary or proper parties to the foreclosure action. The liens were on Cherokee's property, not on T-M's.

Since we find no error, the decree is affirmed.

We agree. HARRIS, C.J., and BYRD and HOLT, JJ.