LAVACA SCHOOL DISTRICT NO. 3 *v.* CHARLESTON
SCHOOL DISTRICT NO. 9

90-216                                             800 S.W.2d 703

Supreme Court of Arkansas
Opinion delivered December 10, 1990

*Thompson & Llewellyn, P.A.*, by: *William P. Thompson* and *M. Keith Blythe*, for appellant.

*Stephen A. White*, for appellee.

OTIS H. TURNER, Justice. This controversy involves a dispute between Lavaca School District No. 3 and Charleston School District No. 9 over which district is entitled to the tax revenue from 3,386.53 acres of real property formerly located in the now-defunct Mays Chapel School District No. 20 (Mays Chapel) and the Ursula School District No. 31 (Ursula). Though a number of salient facts and records are apparently missing, we find, based upon the record before us, that the decision of the trial court is supported by substantial evidence, and we affirm.

Charleston School District No. 9 (Charleston) encompasses lands located in Franklin County, Logan County, and the Greenwood District of Sebastian County. Lavaca School District No. 3 (Lavaca) is entirely within Sebastian County, and all of the lands at issue in this case are within Sebastian County.

On December 31, 1929, the Sebastian County Board of Education ordered a consolidation of Mays Chapel, Ursula, and Lavaca. Lavaca became the surviving school district. Thereafter, the official Board of Education records are silent, but from 1929 until 1946, taxes on that part of the property located in the Mays Chapel District were paid to Lavaca. Taxes on the property within the Ursula District were likewise paid to Lavaca until 1949, with the possible exception of a part of the taxes for the years 1932, 1937, and 1940.

In 1946, taxes on that portion of the lands in Mays Chapel were diverted to Charleston, and Charleston has continued to receive those payments without apparent complaint until the filing of this suit. Likewise, the taxes on the lands in the Ursula District were diverted to Charleston in 1949. They have continued to be paid to Charleston without exception until this

complaint.

No documentation supporting any authority for the diversion of the tax funds is included in the record.

The annual reports of the Franklin County Board of Education indicate that the Ursula District was operated as a part of the Charleston District in the 1940-41 and 1941-42 school years.

The Charleston records also indicate, and the parties stipulated at trial, that for some period of time after the 1929 consolidation order — possibly as early as 1938 — Ursula School was operated as a "ward" or "wing" school by Charleston.

It was further stipulated that a majority of the students living in the area in question attend the Lavaca Schools. However, any student wishing to attend Lavaca must first apply to Charleston for permission to transfer and also apply to Lavaca for acceptance. These transfer requirements have been in existence for a number of years, and Lavaca has recognized and accepted the policy.

Official district maps submitted by the Sebastian County Board of Education to the State Department of Education indicate that, as early as 1936, the disputed area was included in the Charleston District. No such map or record shows any of the involved land to be in the Lavaca District.

The Circuit Court of Sebastian County, Greenwood District, resolved the issues in favor of Charleston. The Lavaca District raises three points for reversal: first, that the 1929 order of the Sebastian County Board is binding and not subject to collateral attack; second, that any subsequent consolidation or substantial change of school district boundaries without County Board action or approval is void; third, that the trial court erred in holding that Lavaca and the Sebastian County Board of Education are estopped from challenging the boundaries asserted by the Charleston District.

With regard to appellant's first point, the record of the 1929 action of the County Board is not subject to a collateral attack at this late date. As it is the only order appearing of record, it is valid and binding in the absence of an estoppel, *if* estoppel is available.

Likewise, any substantial change in school district bounda-

ries without county board approval is not valid unless a substantial factual basis exists to support an estoppel, *if* the doctrine of estoppel is available.

It is clear that a resolution of the entire dispute between these two parties hinges upon whether or not the doctrine of estoppel is available to Charleston, and, if so, whether the record supports Charleston's allegation and the trial court's application of the doctrine. As a general proposition, estoppel is not available against a sovereign. *Arkansas State Highway Commission* v. *Lasley*, 239 Ark. 538, 390 S.W.2d 443 (1965). It should be noted at the outset, in answer to the appellants' argument, that it is clear from the record that the doctrine of estoppel is not asserted by the appellee for the purpose of altering the boundaries of an existing district; instead it is asserted as a defense to a claim by the appellants that the disputed lands are wrongfully included in the Charleston District.

The factual basis for the trial court's application of the doctrine is abundantly sufficient, again, if the doctrine is available in this instance.

■■ We have said that an estoppel may be supported when one has deliberately done an act or said a thing, and another who had a right to do so has relied on that act or words, shaped his conduct accordingly, and will be injured if the former can repudiate the act or recall the words. *Baker-Matthews Lumber Co.* v. *Bank of Lepanto*, 170 Ark. 1146, 282 S.W.2d 995 (1926), citing *Trapnall* v. *Burton*, 24 Ark. 371, (1866). For silence alone to constitute an estoppel there must be both the opportunity and the duty to speak. The action of the person asserting the estoppel must be the natural result of the silence, and the silent party must be in a situation to know that someone is relying on the silence to his detriment. *Baker-Matthew Lumber Co.* v. *Bank of Lepanto*, supra.

■ Though the doctrine had its beginnings in equity, we have long held that estoppel in pais may be set up in actions at law as well as in suits in equity. *Moorehead* v. *Universal C.I.T. Credit Corporation*, 230 Ark. 896, 327 S.W.2d 385 (1959).

■ In spite of the general rule that estoppel is not available against a sovereign, we have recognized that in actions between

108

school districts — each being a "sovereign" in the technical sense — estoppel may be available.

In the early case of *Cotter Special School District No. 60* v. *School District No. 53*, 111 Ark. 79, 162 S.W. 59 (1913), the issue before the court was an order void on its face whereby the county court, without authority, changed the boundaries of the complaining district. Though admittedly dicta and unnecessary to the decision in that case, the court observed that neither the school directors nor the people had acquiesced over a long period to the condition created by the void order and thus were not estopped from seeking their remedy. Again, in *Carter Special District* v. *Hollis Special School District*, 173 Ark. 781, 293 S.W. 722 (1927), the court, quoting with approval the estoppel language contained in *Cotter Special School District No. 60*, observed that a delay of ten years, absent any "special circumstances," was insufficient in that case to create an estoppel.

In *Magnolia School District No. 14* v. *Rural Special District No. 3*, 202 Ark. 49, 149 S.W.2d 579 (1941), the court quoted the language from *Cotter* and went on to observe that "special circumstances" as referred to in *Cotter* existed; the court then applied the doctrine of estoppel to avoid an inequitable result.

The lands at issue in this case have been assessed as being in the Charleston District, and the tax revenue received has been paid to that district for over 40 years, without any objection by Lavaca. But the admitted fact that clinches the application of the doctrine is that school-age children living within the disputed area have long been required first to obtain the consent of the Charleston District before Lavaca would consider their admission to the Lavaca Schools.

We choose, in this instance, to follow the exception to the general rule as that exception was applied in *Magnolia* and permit the application of the doctrine of estoppel to resolve this boundary dispute between school districts — a dispute amounting to a contest between sovereign and sovereign.

Affirmed.

GLAZE, J., dissents.