J.W. REYNOLDS LUMBER CO. *v.* SMACKOVER STATE BANK

91-212                                                    836 S.W.2d 853

Supreme Court of Arkansas
Opinion delivered July 20, 1992

344

*Spencer, Spencer, Depper, & Guthrie*, by: *Robert L. Depper, Jr.*, for appellant.

*Compton, Prewett, Thomas, & Hickey, P.A.*, by: *William I. Prewett*, for appellee.

STEELE HAYS, Justice. This is a civil suit for damages resulting from an embezzlement by Ms. Jimmie Brown, a long time bookkeeper of J.W. Reynolds Lumber Company (plaintiff-appellant). Reynolds filed suit against Smackover State Bank (defendant-appellee), contending the Bank wrongfully permitted Ms. Brown to obtain funds from a Reynolds account in breach of an express trust and of a contractual agreement. Reynolds advanced several theories of liability by the Bank, and those theories are renewed on appeal. Finding no error, we affirm.

Ms. Jimmie Brown began working for Reynolds in 1962 as as assistant to Mr. Toland, bookkeeper for a variety of operations in connection with Reynolds's lumber and other businesses. Checks payable to Reynolds were endorsed "For Deposit Only" and taken to the Bank by Toland. When necessary, Toland would obtain cash by a "less cash" notation on the deposit slip and use it

to replenish the cash drawer at Reynolds. Toland was authorized to write checks on Reynolds's account at the Bank on his signature alone.

On Mr. Toland's retirement, Ms. Brown succeeded him as bookkeeper and she continued the "less cash" procedure, but she had no authority to make withdrawals from the account without an additional signature. Sometime in 1974 Ms. Brown began to take money for her personal use from the cash drawer, which she would then replace with cash obtained from the "less cash" procedure notations on the deposit slips. Between 1974 and 1986, when she resigned to take another job, Ms. Brown's expropriations totaled $74,897.78.

The defalcation went undiscovered over many years because the general manager, N.T. Rutledge, the accountants and other employees, while they audited the bank statements and records of the company's operations, did not examine the deposit slips, which were regularly filed at Reynolds' office.

Ms. Brown's successor noticed the "less cash" notation on some deposit slips and questioned these transactions since she was not accustomed to that procedure. She brought it to the attention of her employer and Ms. Brown was asked for an explanation. She readily admitted the embezzlement and some of Reynolds' loss has been recovered.

### I.

#### Whether The Court Erred In Holding That An Implied Trust Did Not Exist Between the Appellant and Appellee

The complaint alleged an express trust, but at trial Reynolds relied on the existence of a constructive or implied trust between it and the Bank. Reynolds contends the Bank breached a fiduciary obligation arising from the trust relationship. The chancellor held there was no implied trust between the Bank and Reynolds, rather the relationship was that of debtor/creditor. We believe that holding was correct.

This court has stated that a constructive trust is an implied trust, arising by operation of law to satisfy the demands of justice. *Hall* v. *Superior Federal Bank*, 303 Ark. 125, 794

S.W.2d 611 (1990). While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against the other, suffices generally to ground equitable relief in the form of declaration and enforcement of a constructive trust. *Id.*

"A trust is a fiduciary relationship. . . ." *Halliburton Co.* v. *Owen Family Trust*, 28 Ark. App. 314, 773 S.W.2d 453 (1989). In *Cherokee Carpet Mills* v. *Worthen Bank*, 262 Ark. 776, 561 S.W.2d 310 (1987) we stated, "[i]t is unquestionably the law that a general deposit of money in a bank passes the title to the bank and establishes the relation of debtor and creditor between the bank and the depositer. . . ." *See also* B. Clark, *The Law of Bank Deposits, Collections and Credit Cards* § 2.1 (1981); J. White & R. Summers, *Uniform Commercial Code* § 18-1 (1988).

It is axiomatic that persons cannot be held liable as a trustee unless they expressly, or by necessary implication, agreed to act as such and are aware of the terms under which the deposit has been made and the conditions upon which it may be released. *Lasley* v. *Bank of Northeast Arkansas*, 4 Ark. App. 42, 627 S.W.2d 261 (1982). Reynolds does not cite any evidence which supports the theory of implied trust. As mentioned by the Bank, Reynolds bears the burden of demonstrating that an error occurred at the trial level. *Looper* v. *Madison Guaranty Savings & Loan Associates*, 292 Ark. 225, 729 S.W.2d 156 (1987).

There are circumstances under which the debtor/creditor relationship between banks and depositors is altered, but the existence of a trust relationship is dependent upon the bank having knowledge or notice sufficient to put it on inquiry. *Cherokee Carpet Mills, supra*; *In re Brittenum & Associates, Inc.*, v. *Cross County Bank*, 83 B.R. 574 (E.D. Ark. 1988).

Here there were no facts to indicate that Reynolds and the Bank had any relationship beyond that of debtor/creditor. That being so, there was no fiduciary relationship and the chancellor did not err in dismissing the claim based upon implied trust.

## II.

### Whether The Court Erred In Holding That There Was No Contract Existing Between The Parties, Therefore, There Was No Breach of Contract By The Bank

Reynolds argues that the signature card, executed by it and the Bank establishes the existence of a written contract between the parties which the Bank breached. The relevant part of the signature card states:

> TO SMACKOVER STATE BANK, SMACK-OVER, ARKANSAS. Below please find duly authorized signatures which you are to recognize in payment of checks on you and in the transaction of any other business on my/our account.

The chancellor held that the signature card did not establish a contract between the parties because it states that certain signatures are required to sign checks but nothing in the signature card deals with deposits. The chancellor noted that if a contract was breached it was an implied contract not in writing. The chancellor further found that Ark. Code Ann. § 4-4-406 (1987), which provides a time limitation in which a customer may notify a bank that it has paid over an unauthorized signature, was not applicable because under the statute the original deposit slip had to have been returned to the customer, whereas here it was retained by the Bank. The chancellor also found that Reynolds's failure over a span of twelve years to discover the embezzlement would constitute contributory negligence on the part of Reynolds that was "at least as much a cause of the loss to plaintiff as was the negligence of the employees of defendant." Finally, the chancellor held the equitable defenses of laches and estoppel would preclude Reynolds from recovery under a contract theory.

The CEO of the Bank testified that it was the Bank's custom to allow a person making a deposit marked "For Deposit Only" to receive "less cash" if the person was authorized to withdraw from the account. A senior vice president-cashier testified that the "less cash" transaction on deposits of "For Deposit Only" items had always been the Bank's policy and was followed generally by other banks. A banking consultant, Don Coker, testifying as an

expert witness, stated that in business accounts allowing a person to receive cash from a deposit marked "For Deposit Only" is not a sound or common banking practice. The chancellor held that the bank allowing cash to be given on such deposits was a breach of an implied contract, but Reynolds could not recover because of the defenses of laches and equitable estoppel.

■ We agree. The theory of laches and equitable estoppel are based on the fact that Reynolds allowed this practice to go on for twelve years without complaining. This court stated that for silence to constitute an estoppel there must be both the opportunity and the duty to speak. *Lavaca School Dist. No. 3* v. *Charleston School Dist. No. 9*, 304 Ark. 104, 800 S.W.2d 703 (1990). The action of the person asserting the estoppel must be the natural result of the silence, and the silent party must be in a situation to know that someone is relying on the silence to his detriment. *Id.* Laches is based on the theory that it is the unreasonable delay of the party seeking relief under such circumstances as to make it inequitable or unjust for the party to seek relief now. *Briarwood Apartments* v. *Lieblong*, 12 Ark. App. 94, 671 S.W.2d 207 (1984).

Appellant does not argue on appeal that the doctrines of equitable estoppel and laches are not applicable. Banks give depositors duplicate deposit slips to verify their actions. For twelve years, Reynolds received duplicate deposit slips which were kept in the company's records but not checked, while the embezzlement went undetected. Only the bank statements, which did not show the "less cash" withdrawals, were checked by the company.

### III.

Whether The Court Erred In Holding That
Appellant's Negligence Action Was Barred
By Appellee's Defenses of Contributory
Negligence and Laches and Estoppel

■ The chancellor held the Bank was negligent in allowing cash withdrawals against checks deposited with the endorsement "For Deposit Only." We think that was correct because the Bank's actions in paying over the specific endorsement were clearly negligent under Ark. Code Ann. §§ 4-3-205 -206 (1987).

However, the chancellor also found Reynolds could not recover damages on the negligence theory because it failed to review the duplicate deposit slips maintained over the twelve years in its office which would have disclosed the dishonesty. Therefore, the court held that the Bank's defenses of contributory negligence, laches and estoppel precluded any recovery.

Relying on *First Bank & Trust of Jonesboro* v. *Vaccari*, 288 Ark. 233, 703 S.W.2d 867 (1986), Reynolds argues, with respect to the issue of comparative fault, the question of the Reynolds's negligence is irrelevant until the Bank established it acted according to reasonable commercial standards. Since there was testimony that the Bank's practice was not sound banking practice, Reynolds contends the chancellor was wrong to address the negligence of Reynolds.

In *Vaccari, supra*, a judgment was obtained against a bank on a claim of conversion arising from embezzlement of funds by a company employee who signed company checks, deposited them into an account opened for her own use under the company's name and appropriated the funds to her own use. *Vaccari* was decided under Ark. Stat. Ann. § 85-3-419 (3) which was codified at Ark. Code Ann. § 4-3-419 (1987). *Vaccari* is a decision made under prior law and Ark. Code Ann. § 4-3-420 (1987) now governs conversion of instruments. Furthermore, the requirement on the bank to show it acted in good faith and in accordance with reasonable commercial standards is only a requirement of U.C.C. § 3-419(3) dealing with conversion. It was intended to relieve certain banks of any liability for conversion beyond the proceeds remaining in the bank's hands, when the bank was able to prove it acted in good faith following reasonable commercial standards. Annotation, *Bank's Reasonable Commercial Standards Defense Under UCC* § 3-419(3), 49 A.L.R. Fed. 888 (1986 and Supp. 1991). Therefore, *Vaccari* is not applicable to appellant's negligence claim, and Reynolds's argument here must fail.

## IV.

### Whether The Court Erred In Holding That
### The Bank Was Not Guilty Of Conversion

██ Reynolds argues it should have prevailed in its conversion theory. Conversion is an intent to exercise dominion or control over property which is inconsistent with the owner's right. *City National Bank of Fort Smith* v. *Goodwin*, 301 Ark. 182, 783 S.W.2d 335 (1990). Reynolds maintains the Bank converted its funds because the checks that Ms. Brown presented to the Bank were the property of Reynolds and when the Bank gave her money that, according to the restrictive endorsement, was supposed to be deposited in Reynolds's account, the Bank converted its property.

██ The chancellor held there was no conversion on these facts and we agree. It would be stretching the definition of conversion in this case because the Bank was not exercising any dominion or control over the money. It was simply depositing the money in Reynolds account or giving Ms. Brown the "less cash" proceeds in accordance with its custom and practice. Furthermore, as the Bank points out, there was no evidence of intent. The Bank did not intentionally exercise control over this money, counter to the rights of its customer, because the Bank had no knowledge the transactions were inconsistent with those rights.

## V.

### Whether The Court Erred In Dismissing
### Appellant's Bailment Cause Of Action

Reynolds argues that because the checks were endorsed "For Deposit Only," a bailment was created between Reynolds and the Bank. Reynolds contends that due to the restrictive endorsement, the deposits were for a special purpose.

██ As we have noted previously, general deposits of money in a bank merely create a debtor/creditor relationship between a bank and its customer. Only if money is placed in the bank for the purpose of safekeeping or on an understanding that the bank shall act as bailee, does the deposit become a special deposit and the bank becomes an agent or bailee with no right to use the money except pursuant to the terms of the bailment agreement. *Lasly* v. *Bank of Northeast Arkansas*, 4 Ark. App.

42, 627 S.W.2d 261 (1982).

Here there was no evidence of a bailment agreement between the parties, instead, there is only evidence that this was a general account where the Bank had a right to use the money on deposit and commingle it with its own funds. Thus, the chancellor did not err by dismissing the cause of action based on bailment.

## VI.

### Subject Matter Jurisdiction

We do not share our colleagues' view that four years of hard fought litigation must go for naught and these parties sent back to square one to begin anew. While the complaint alleges an express trust, before trial it appeared the real remedy sought by appellant was a trust by implication of law and the case was tried without objection on that theory. When an issue is tried by consent of the parties, express or implied, it is "in all respects" as if the issue had been raised in the pleadings. Ark. R. Civ. P. 15(b). As to whether equitable jurisdiction attaches to issues involving trust, there can be little doubt. "Courts of equity have inherent and exclusive jurisdiction of trusts, independently of statute, whether they arise by express trust or result by implication of law." *Spradling* v. *Spradling*, 101 Ark. 451, 142 S.W.2d 848 (1911).

> Broadly stated, courts of equity always have jurisdiction of the subject matter in a case in which there is an element of trust. Such courts have jurisdiction of suits to establish the existence, to protect, or to compel the performance of, a trust, or to protect the beneficiary, and have jurisdiction over suits or proceedings which otherwise involve trusts or trustees, whether the trust is one that is express or arises by operation of law.

76 Am. Jur. 2d § 660 (1992).

Certainly it is settled law that subject matter jurisdiction, if lacking, cannot be induced simply because there is no objection. But that general rule applies *only* where jurisdiction could not "under any circumstances" exist, *Crittenden County* v. *Williford*, 283 Ark. 289, 675 S.W.2d 631 (1984); *Smith* v. *Whitmire*, 273 Ark. 120, 617 S.W.2d 845 (1981); *Whitten*

*Developments, Inc., et al.* v. *Agee*, 256 Ark. 968, 511 S.W.2d 466 (1974); *Price* v. *Madison County Bank*, 90 Ark. 195, 118 S.W. 706 (1909); or where chancery court is "wholly incompetent to grant the relief sought." *Carter* v. *Phillips*, 291 Ark. 94, 722 S.W.2d 590 (1987); *Titan Oil & Gas* v. *Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974). Examples would be where a circuit court granted a divorce, or ordered specific performance, or where a chancery court heard an election contest or, to borrow from the dissent, assumed jurisdiction over a personal injury action upon an allegation that the alleged tort-feasor was holding the plaintiff's anticipated damages in trust. The transparency of that example is self-evident, as there are striking dissimilarities between it and the facts of this case. Reynolds' theory of liability was that the Bank was bound to honor withdrawals from Reynolds account on not less than two signatures. Thus, when the Bank effectively permitted withdrawals on only one signature under the "less cash" device, the money it delivered to the embezzler was not Reynolds', but its own, and those accumulated funds were held in trust for Reynolds by implication of law. Admittedly, it is a novel theory, and not one which the chancellor found persuasive, but novel theories are not strangers to the law and bear no stigma and we think it beyond dispute that chancery was not wholly lacking in jurisdiction, but was, by long tradition, competent to grant the relief sought in the premises had Reynolds prevailed.

It must be noted, as well, and notwithstanding the inchoate objection to jurisdiction mentioned in the dissent, that these parties and the trial court were quite content to try this case in chancery. That "objection," mentioned casually in opening statement at trial, was plainly perfunctory and tactical. In fact, counsel for appellee stated forthrightly in oral argument that he did not object to jurisdiction of chancery court, did not move to transfer— an essential step to a jurisdictional challenge— and was not sure but that Reynolds might develop some theory of an implied trust. Significantly, from the outset the Bank raised the affirmative defense of laches as its primary defense, a defense the chancellor specifically sustained. That defense is cognizable *only* in courts of equity and is available *only* where equitable relief is sought. *Rinke* v. *Schuman*, 246 Ark. 976, 440 S.W.2d 765 (1969); *Owen* v. *Johnson*, 222 Ark. 872, 262 S.W.2d 480 (1954);

*Eades* v. *Joslin*, 219 Ark. 688, 544 S.W.2d 623 (1951).

█ Nor can we agree there is anything untoward in the admission of counsel for Reynolds that the choice of forum was influenced by the fact that defenses available in equity were less formidable than at law. Such considerations by prospective litigants are entirely appropriate to our system and, indeed, were the very genesis of courts of equity.

█ We conclude that equitable jurisdiction of the subject matter was not wholly lacking and no useful purpose would be served by a dismissal of this appeal.

Affirmed.

DUDLEY and NEWBERN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. This is a garden variety embezzlement case. The Chancery Court lacked jurisdiction, and the case should be remanded for transfer to a circuit court.

The only allegation in Reynolds' complaint suggesting chancery court jurisdiction was one of "express trust," but no fact, such as a reference to a trust instrument, was alleged in support of finding an express trust. In his letter opinion the Chancellor states that Reynolds alleged an implied trust (apparently meaning constructive or resulting trust), and apparently that was a theory upon which Reynolds proceeded before the Chancellor without amending the complaint.

At the outset of the hearing before the Chancellor, counsel for the Bank pointed out that Reynolds had a complete and adequate remedy at law and, "Simply putting in an allegation of a so-called implied trust does not divest Circuit Court of jurisdiction. And we continue to object to Chancery Court jurisdiction throughout the trial." The Chancellor apparently did not explicitly rule on the objection. There was no motion to transfer the case to a circuit court. While the Bank has not raised the question of subject matter jurisdiction in this appeal, it is an issue we have a duty to raise on our own. *See Coran* v. *Keller*, 295 Ark. 308, 748 S.W.2d 349 (1988); *Arkansas S. & L.* v. *Corning*, 252 Ark. 264, 478 S.W.2d 431 (1972).

In the opening paragraphs of Reynolds' argument to this

Court, it is clearly stated that there was no express trust, and the argument proceeds on theories of constructive or resulting trust as well as legal theories of bailment, breach of contract, conversion, and negligence.

Chancery courts have original jurisdiction in matters of equity. Ark. Code Ann. § 16-13-304 (1987). *See* Ark. Const., art. 7, §§ 1, 11 and 15; Ark. R. Civ. P. 2. The remainder of the general subject matter jurisdiction of Arkansas trial courts is retained in the circuit courts. Ark. Const., art. 7, § 11.

In *Bierbaum* v. *City of Hamburg*, 262 Ark. 532, 559 S.W.2d 20 (1977), Bierbaum sought a mandatory injunction against the City to compel it to remove a water pumping station it had mistakenly built on land owned by him. The City counterclaimed for condemnation. The Chancellor denied the injunction and held that the City had the right to condemn the property. He then transferred the case to the Circuit Court for determination of damages, despite the lack of any motion to transfer or demand for jury trial. We held the Chancellor had no authority to transfer a case to a circuit court on his own motion and should have retained the case under the cleanup doctrine to determine the damages.

In *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986), we attempted to reconcile the *Bierbaum* case with our cases on "subject matter jurisdiction" of chancery courts. We concluded that the matter is most often one of "propriety" rather than jurisdiction in the traditional sense and that we would not reverse a chancery court decision on subject matter jurisdiction grounds unless there was no tenable nexus whatever with a chancery court's equitable or statutory jurisdiction.

Arkansas is a fact pleading jurisdiction. Ark. R. Civ. P. 8; *West* v. *Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608 (1991); *Harvey* v. *Eastman Kodak Co.*, 271 Ark. 783, 610 S.W.2d 582 (1981). The jurisdiction of the trial court of the subject matter of a claim is determined initially from the pleadings. *Walker* v. *State*, 308 Ark. 498, 825 S.W.2d 822 (1992); *McKinney* v. *City of Eldorado*, 308 Ark. 284, 824 S.W.2d 826 (1992). If the pleadings state no fact in support of the Court's jurisdiction, the trial court should not proceed. *Martin* v. *Couey Chrysler Plymouth, Inc.*, 308 Ark. 325, 824 S.W.2d 832 (1992) (subject matter

jurisdiction); *Malone & Hyde, Inc.* v. *Chisley*, 308 Ark. 308, 822 S.W.2d 394 (1992) (personal jurisdiction). In other words, it is not enough just to name an equity theory cognizable in a chancery court and then state facts which would not support the equity theory but which might support legal claims. While the *Liles* case gave as examples of lack of a tenable nexus instances of specific statutory and constitutional assignment of classes of cases to certain courts, it was not meant to suggest that a party could invoke chancery jurisdiction merely by naming an equitable theory or remedy and have jurisdiction sustained without stating, proving or even arguing to the chancellor any fact in support of that theory or remedy.

There are, of course, instances in which pleadings state facts upon which jurisdiction depends, and those facts turn out to be untrue, thus depriving the court of jurisdiction. In such cases, we have, on many occasions, stated that prohibition will not lie at the beginning of the case but that a jurisdictional error can be corrected on appeal. *See, e.g., Statewide Health Coordinating Council* v. *Circuit Court of Pulaski County*, 287 Ark. 84, 696 S.W.2d 729 (1985); *Isely* v. *Isely*, 287 Ark. 401, 700 S.W.2d 49 (1985). In considering subject matter jurisdiction of a chancery court, a complication arises because of the cleanup doctrine. If a chancery court obtains jurisdiction for one purpose, such as to decide a fact upon which availability of an equitable remedy, and thus equitable jurisdiction, might rest, then it may decide all issues presented. That is illustrated in *Bierbaum* case where we held that the chancellor should have decided the issue of damages despite the fact that the equitable remedy was no longer at issue.

When questioned on subject matter jurisdiction during oral argument, Reynolds' counsel candidly stated, as he had done before the Chancellor, his reason for seeking application of a trust was simply that the statute of limitations would bar Reynolds' claim for nearly all of the 12-year embezzlement period if he were to have asserted his bailment, breach of contract, and negligence claims in a circuit court where they belonged.

In oral argument before this Court, Reynolds contended the "implied trust" theory was a legitimate invocation of chancery jurisdiction upon which to base jurisdiction of the other claims under the clean up doctrine. The argument is that the money

given to Ms. Brown as "less cash" was the Bank's money, not Reynolds' money, and thus the Bank continues to hold Reynolds' money in its possession in trust.

Regardless of the merits of this characterization of the facts, and its direct inconsistency with paragraph 12. of Reynolds' complaint that "the Bank gave Lumber Company money to "Ms. Brown, I cannot regard the pleadings as having been amended to conform to that version, as I can find no evidence in Reynolds' abstract that it was presented to the Chancellor. The record contains a trial brief submitted to the Chancellor at the conclusion of the trial, but no post-hearing briefs are included in the record. If he had argued that the money given to Ms. Brown belonged to the Bank, it would have been inconsistent with Reynolds' counsel's consistent references before the Chancellor, which are included in the record and are consistent with Reynolds' pleading, to money given by the Bank to Ms. Brown as having come from the deposits or from the Bank's account. I cannot say the pleadings were amended to conform to proof which was not offered or argued.

It is clear that no fact was stated in support of subject matter jurisdiction in the Chancery Court; nor was any evidence of a fact which would have established a constructive or resulting trust offered or even argued. That the Chancellor apparently considered (and correctly declined) arguments on trust theories does not change the fact that the case should not have remained in Chancery Court beyond the pleadings stage. The Chancery Court lacked jurisdiction and should have transferred the case to the Circuit Court at the outset. *See* Ark. Code Ann. §§ 16-13-401 and 16-57-104(a) (1987); *Linder* v. *Howard*, 296 Ark. 414, 757 S.W.2d 549 (1988); *Meeks* v. *Arkansas Power & Light Co.*, 147 Ark. 232, 227 S.W.2d 405 (1921).

This case is no different from one in which a party to an automobile accident files a complaint in a chancery court claiming injury and asserting that the money he is due in the form of damages is being held in trust by the defendant and thus a chancery court has jurisdiction. The *Liles* case opinion went as far as this Court should go toward minimizing the problems caused by the continued separation of our equity and law courts. The majority opinion in this case crosses the line and violates Ark.

Const. art. 7, §§ 11 and 15.

I fully realize that it seems a waste of judicial resources to remand this case for transfer when both parties are, now at least, happy with the choice of trial forum. There is, however, a larger question involved which the majority of the members of this Court choose to ignore. Separation of equity courts from law courts may be an anachronism, but it is a constitutional anachronism. If we wink at it or turn our heads we do the law a great disservice in two ways. First, we display our willingness to ignore our fundamental organic document, and that weakens the law and this Court. Second, we make it easier for the people and the General Assembly to continue to decline badly needed reform of our Constitution's judicial article.

I respectfully dissent.

DUDLEY, J., joins in this dissent.