The Honorable Mark Martin State Representative 23 North Pittman Street Prairie Grove, AR 72753-2935
Dear Representative Martin:
I am writing in response to your request for my opinion on the following questions:
 1. Do provisions of HB 2489 of the 2007 Regular Session of the 86th General Assembly conflict with Arkansas Constitutional Amendment 33 in any way, but specifically as it relates to the board of the institution of higher learning's substantive power of granting course credits which is vested in the institution's board by long practice?
 2. If a college or university chooses not to defend certain items that appear to conflict with its constitutional protection under Amendment 33, such as SB22, SB23, SB25 and HB2489, then does this inaction constitute precedence for justifying similar legislative encroachments in the future since these items would apparently not be considered by the institution's boards to be an item of "substantive power"?
 3. Does the mandating of what must be accepted for "course credit" compromise the institution's qualified autonomy in setting fundamental educational policy? For example, if this bill passes into law and is implemented without objection would precedence be set for future *Page 2 
legislation to mandate course credit be given for coursework completed through a rigorous and advanced online distance education program?
RESPONSE
With respect to your first question, although this office has previously opined that a long practice of exercising a substantive academic power might indeed "vest" a power exclusively in the board of an institution of higher education, the Arkansas Supreme Court has not yet declared this to be the case for purposes of an Amendment 33 analysis. Assuming this standard indeed applies, it may be that the legislature's dictating that undergraduate college students as a class be granted course credits would run afoul of Amendment 33 in at least certain instances. In my opinion, the question of what powers have vested in an institution's board can only be addressed on an institution-by-institution basis, rendering the blanket legislation at issue susceptible to constitutional attack at least by an institution in which a particular power has vested. With respect to your second question, I cannot address in the abstract what might be the effect on future "similar legislative encroachments" if an institution fails to challenge legislation that might currently encroach on its vested rights under Amendment 33. I can do no more than acknowledge that a reviewing court might question whether a particular right has truly "vested" in a college or university board if the board silently accepts mandates of the legislature relating to the exercise of that right. I have found no judicial precedents addressing this issue. With respect to the first part of your third question, I believe an institution's accepting a legislative mandate as to what the institution must accept for course credit might well compromise what might otherwise be deemed the institution's autonomy in a matter of "fundamental educational policy." With respect to the second part of your third question, I believe that a reviewing court might indeed deem an institution's acquiescence to legislative constraints regarding the granting of course credits as a precedent should the legislature later seek to impose an additional constraint requiring the granting of course credit for "a rigorous and advanced online distance education program." Again, however, the Arkansas Supreme Court has yet to address this issue. Judicial clarification is warranted. *Page 3 
 Question 1: Do provisions of HB 2489 of the 2007 Regular Session ofthe 86th General Assembly conflict with Arkansas ConstitutionalAmendment 33 in any way, but specifically as it relates to the board ofthe institution of higher learning's substantive power of grantingcourse credits which is vested in the institution's board by longpractice?
House Bill 2489 proposes to amend title 6, chapter 60, subchapter 1 of the Arkansas Code to add the following section:
 6-60-103. Undergraduate course credit for high school students completing postsecondary-level programs.
 (a) As used in this section:
 (1) "Advanced Placement examination" means an examination administered through the Advanced Placement Program;
 (2) "College-Level Examination Program examination" means an examination administered through the College-Level Examination Program;
 (3) "Coordinating board" means the Higher Education Coordinating Board;
 (4) "Arkansas state institution of higher education" means a public institution of higher education that offers freshman-level courses; and
 (5) "International Baccalaureate Diploma Program" means the curriculum and examinations leading to an International Baccalaureate diploma awarded by the International Baccalaureate Organization.
 (b) Each Arkansas state institution of higher education that offers freshman-level courses shall adopt and implement a policy to grant undergraduate course credit to an entering freshman student who has: *Page 4 
 (1) Successfully completed the International Baccalaureate Diploma Program;
 (2) Achieved required scores on one (1) or more examinations in the Advanced Placement Program; or
 (3) Successfully completed one (1) or more courses offered through concurrent enrollment in high school and at an Arkansas state institution of higher education.
 (c) In the policy required under subsection (b) of this section, the Arkansas state institution of higher education shall:
 (1) Establish the Arkansas state institution of higher education's conditions for granting course credit, including the minimum required scores on College-Level Examination Program examinations, Advanced Placement examinations, and examinations for courses constituting the International Baccalaureate Diploma Program; and
 (2) Based on the correlations identified under subsection (f) of this section, identify the specific course credit or other academic requirements of the Arkansas state institution of higher education, including the number of semester credit hours or other course credit that the Arkansas state institution of higher education will grant to a student who:
 (A) Successfully completes the International Baccalaureate Diploma Program;
 (B) Achieves required scores on one (1) or more examinations in the Advanced Placement Program or the College-Level Examination Program; or
 (C) successfully completes one (1) or more courses offered through concurrent enrollment in high school and at an Arkansas state institution of higher education. *Page 5 
 (d) Each Arkansas state institution of higher education shall:
 (1) Report to the Arkansas Higher Education Coordinating Board the Arkansas state institution of higher education's policy adopted under this section; and
 (2) Include a copy of the Arkansas state institution of higher education's policy adopted under this section with the Arkansas state institution's undergraduate student application materials, including application materials available on the Arkansas state institution's Internet website.
 (e) On request of an applicant for admission as an entering freshman, an Arkansas state institution of higher education, based on information provided by the applicant, shall determine and notify the applicant regarding:
 (1) The amount and type of any course credit that would be granted to the applicant under the Arkansas state institution of higher education's policy adopted under this section; and
 (2) Any other academic requirement that the applicant would satisfy under the policy.
 (f) The Department of Higher Education shall facilitate a process by which each Arkansas state institution of higher education shall:
 (1) Identify correlations between the subject matter and content of courses offered by each Arkansas state institution of higher education and the subject matter and content of courses and examinations in the International Baccalaureate Diploma Program, the Advanced Placement Program, and the College-Level Examination Program; and
 (2) Make that information available to the public on the website of each Arkansas state institution of higher education. *Page 6 
 (g) An Arkansas state institution of higher education shall grant at least twenty-four (24) semester credit hours or equivalent course credit in appropriate subject areas to an entering freshman student for successful completion of the International Baccalaureate Diploma Program.
 (h) This section becomes effective beginning with the 2008-2009 school year.
I must note at the outset that your question appears to assume that Amendment 33 sets forth a clear and unambiguous standard establishing when the board of an institution of higher learning has the power to act independently of any legislative oversight — namely, when the board exercises a "substantive power of granting course credits which is vested in the institution's board by long practice." For reasons both I and my predecessors have discussed in detail in previous opinions, I am not prepared to opine categorically that a board of trustees' exercise over time of substantive policymaking authority in a particular area absolutely insulates the board from legislative interference. As discussed below, an institution's absolute autonomy in the exercise of "vested" rights may be consistent with the somewhat cryptic provisions of Amendment 33, but to date this conclusion has not been judicially confirmed.
Amendment 33 provides in pertinent part:
 § 2. Abolition or transfer of powers of board or commission — Restrictions.
 The board or commission of any institution, governed by this amendment, shall not be abolished nor shall the powers vested in any such board or commission be transferred, unless the institution is abolished or consolidated with some other State institution. . . .
The effective date of Amendment 33 was January 15, 1943.
I most recently found occasion to address the scope of Amendment 33 in the attached Ark. Op. Att'y Gen. No. 2007-007, in which I considered whether the legislature's proposal in HB2697 of 2005 to freeze tuition at freshman-year rates *Page 7 
for students in any public institution of higher learning would encroach on a power "vested" in an institution's board. As I noted in my previous opinion:
 Amendment 33 requires a case-by-case analysis regarding whether a power falling within its ambit has "vested" in an institutional board.
I further summarized the pertinent inquiries as follows:
 [I]t is unclear from this provision whether the reference to "powers vested" is to those vested as of the effective date of Amendment 33 or to powers "vested" at any point in time. Without elaborately discussing the issue, one of my predecessors assumed the latter to be the case, see the attached Ark. Ops. Att'y Gen. Nos. 2002-119 and 2000-107 [sic: "2000-007"] — a conclusion I consider quite plausible, if not inevitable. The purpose underlying the above quoted provision appears to be to insulate from legislative intrusion substantive powers that by practice and tradition have been exercised by the institutions covered by Amendment 33. In Opinion No. 2000-107 [sic: "2000-007"], after noting the complete absence of case law addressing this issue, my predecessor opined that a power might be deemed to have "vested" in a university board (1) if the board has traditionally exercised the power and (2) if the power involves the making of substantive policy. While I must stress again that this standard has not been judicially adopted, I find it consistent with the ordinary-language sense of the term "vest" and with Amendment 33's focus on preserving established institutional prerogatives whose exercise advances the institution's mission. Although the issue would benefit from judicial clarification, I further believe that such prerogatives might be established at any point in time and that it would be strained to suggest that Amendment 33 was intended to cut off the evolution of institutional authority at an arbitrary point in time — namely, the amendment's effective date.
I continue to subscribe to these admittedly tentative conclusions.
In my opinion, a significant tension exists between the provisions of Amendment 33 and those set forth in HB2489. I believe the proposed legislation is problematic primarily in that it would impose blanket restrictions on all *Page 8 
undergraduate institutions of higher education, requiring the institutions to give students college credit for successful completion of the referenced programs.[1] Although the issue is ultimately one of fact to be determined on an institution-by-institution basis, I strongly suspect that many institutions have traditionally exercised exclusive control over the granting of course credits — a policy determination that would appear to implicate a university's core functions and that, as such, might constitute an inviolable "vested" right under Amendment 33.[2] In my opinion, the need to review the extent of such control over course credits institution by institution might in itself be fatal to the proposed legislation. Having offered this conclusion, I must again stress that the questions of when and how an institutional power vests invite judicial clarification.
Question 2: If a college or university chooses not to defend certainitems that appear to conflict with its constitutional protection underAmendment 33, such as SB22, SB23, SB25 and HB2489, then does thisinaction constitute precedence for justifying similar legislativeencroachments in the future since these items would apparently not beconsidered by the institution's boards to be an item of "substantivepower"?
I should note that in Ark. Op. Att'y Gen. No. 2007-007, I addressed the constitutionality of SB22, SB23 and SB25 under Amendment 33 and theFirst Amendment of the United States Constitution. I need not repeat my analysis here. *Page 9 
I find it difficult to address your specific question because it is unclear precisely what you mean by the phrase "similar legislative encroachments." SB22, SB23 and SB25 were all designed to regulate certain aspects of undergraduate textbook sales in an effort to hold down costs to students at the undergraduate level by promoting the sale of used instructional materials.[3] HB2489 addresses the unrelated issue of mandating that course credits be given for successfully completing certain high-school-level programs. I have opined only that legislative curtailment of institutional power with respect to these areas of academic governance might in particular instances violate powers vested in an institution's board pursuant to Amendment 33 and, with respect to the Senate bills, quite possibly violate principles of academic freedom arising from the First Amendment. Without actually reviewing the legislation that you characterize in your question as "similar legislative encroachments," I am unable to opine whether a college or university's inaction in challenging one or more of the recited bills, if enacted into law, would insulate the state from being challenged for enacting "similar" legislation. As a general proposition, I am unaware of any case law that addresses the issue of whether a right "vested" under Amendment 33 might be "divested" by an institution's failure to protect the right against legislative challenge. I have opined, however, that the legislature's historical practice of dictating to institutions of higher education on a topic such as tuition rates might factor into the determination of whether those institutions have "vested" rights on this subject under Amendment 33. Opinion No.2007-007. Again speaking generally, it may be that a doctrine analogous to that applicable in the context of trademark protection might apply with respect to rights "vested" under Amendment 33 — namely, that a substantive right earned over time will remain inviolate only if vigorously defended. If so, in theory, an institution's failure to defend against legislative encroachment its exclusive right to set substantive policy in a particular matter of academic concern might indeed jeopardize not only that particular right but also associated rights that the legislature might later wish to curtail. Having acknowledged this possibility, I must add that this formulation is abstract to the point that its application could only be determined on a case-by-case basis. Again, I believe that a reviewing court would insist on assessing particular legislation against a college or *Page 10 
university's historical practice on an issue of substantive academic significance in order to determine whether the legislature had overstepped its constitutional bounds.
Question 3: Does the mandating of what must be accepted for "coursecredit" compromise the institution's qualified autonomy in settingfundamental educational policy? For example, if this bill passes intolaw and is implemented without objection would precedence be set forfuture legislation to mandate course credit be given for courseworkcompleted through a rigorous and advanced online distance educationprogram?
In my opinion, the answer to the first part of this question is "quite possibly." As I noted in my response to your first question, making determinations about "course credit" would appear to entail making substantive policy decisions that I suspect have traditionally been made exclusively by college or university officials. If so, a reviewing court might conclude that this power has vested in the institution and is beyond the scope of legislative intervention. However, as further noted above, the question of what powers have vested in a particular institution would require a particularized review of that institution's past practices — a conclusion that would appear to preclude blanket legislation of the sort at issue in your request.
The second part of your question again focuses on whether an institution might in effect relinquish a vested right by inaction of a sort reminiscent of laches.[4] As implied in my response to your previous question, if an institution in effect cedes to the legislature its historical control over a curriculum-related matter like course credit, a court might indeed later conclude that the legislature might mandate allowing course credit "for coursework completed through a rigorous and advanced online distance education program." However, I have been unable to locate any case law that directly supports this proposition. Again, the case law addressing the application of Amendment 33 is sparse and provides little guidance.[5] Judicial clarification remains highly to be desired. *Page 11 
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
[1] I appreciate that subsection (c)(1) locates in each institution the discretion to establish "conditions for granting course credit" for participation in the various programs, thereby leaving open the possibility that the standard of eligibility for credit may be more rigorous in some institutions than in others. However, the proposed legislation nevertheless mandates that all institutions offer credit under established circumstances for participation in the programs — a mandate that in itself might encroach on an institution's vested power to determine who, if anyone, will be awarded course credits upon matriculating. Moreover, with respect to a student's participation in the International Baccalaureate Diploma Program, proposed A.C.A. §6-60-103(g) would significantly qualify an institutional board's discretion in awarding credits by directing that "[a]n Arkansas state institution of higher education shall grant at least twenty-four (24) semester credit hours or equivalent course credit in appropriate subject areas to an entering freshman student for successful completion" of the program.
[2] I am reminded in making this point that certain liberal arts colleges in this nation have as a matter of policy adopted rigorously structured curricula, in which electives are highly restricted and students follow a charted course of study designed to acquaint them with the basics of a liberal education. An institution of this sort might be disinclined to offer course credits of any variety — an educational decision that under a standard of the sort set forth in Amendment 33 might quite properly reside in the board, whose determinations would be remote from legislative encroachment.
[3] In the wake of my previous opinion, which raised significant questions about the constitutionality of the proposed legislation, the sponsor requested the return from the governor of SB22 and SB25, which had passed both houses of the legislature. SB23 has passed the Senate and is currently before the House.
[4] As noted in Anadarko Petroleum Co. v. Venable, 312 Ark. 330, 341,850 S.W.2d 302 (1993), the concept of "laches is based on the theory that it is the unreasonable delay of the party seeking relief under such circumstances as to make it inequitable or unjust for the party to seek relief now. Reynolds v. Smackover State Bank, 310 Ark. 342,836 S.W.2d 853 (1992)."
[5] One of the few references to Amendment 33 in the case law is the following from Hooker v. Parkin, 235 Ark. 218, 227, 357 S.W.2d 534
(1962): "The scope of activities which may be assigned to the State Board of Education and its various divisions by the Legislature has no bounds so long as those activities pertain to education (except as limited by Amendment 33)."